Motion for Rehearing Overruled, Opinion of February 28, 2002, Withdrawn;
Affirmed in Part, Reversed and Rendered in Part, Reve









 



Motion
for Rehearing Overruled, Opinion of February 28, 2002, Withdrawn; Affirmed in
Part, Reversed and Rendered in Part, Reversed and Remanded in Part, and Opinion
on Motion for Rehearing filed October 17, 2002.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00577-CV

____________

 

FCLT LOANS, L.P., SUCCESSOR IN INTEREST TO FIRST CITY
BANK B INWOOD FOREST, N.A., Appellant

 

V.

 

THE ESTATE OF LOUISE P. BRACHER; ANTOINETTE BRACHER
LAWRENCE, INDIVIDUALLY AND AS CO-EXECUTRIX OF THE ESTATE OF LOUISE BRACHER;
BARBARA K. OLSON, INDIVIDUALLY AND AS CO-EXECUTRIX OF THE ESTATE OF LOUISE
BRACHER; JAMES V. BRACHER, INDIVIDUALLY AND AS CO-TRUSTEE OF THE DAVID A.
BRACHER FAMILY TRUST; VICTORIA BRACHER-NOYES, INDIVIDUALLY AND AS CO-TRUSTEE OF
THE DAVID A. BRACHER FAMILY TRUST; and DAVID A. BRACHER, Appellees

 



 

On Appeal from the
11th District Court

Harris
County, Texas

Trial Court Cause
No. 98-07448

 



 

O P I N I
O N   O N   M O T I O N  
F O R   R E H E A R I N G








Appellant=s motion for rehearing is overruled;
the opinion issued in this case on February 28, 2002, is withdrawn, and the
following opinion is issued in its place.

This
appeal comes before us on competing motions for summary judgment in a suit
brought by appellant, FCLT Loans, L.P., to recover a debt allegedly owed to
FCLT by Louise Bracher=s estate.  The trial
court granted appellees= motions, denied FCLT=s motion, and entered judgment that
FCLT take nothing.  We reverse the
judgment in part and affirm in part, and we remand for further proceedings
consistent with this opinion.

                                                     Factual Background

In 1980,
Victor Bracher executed a note with First City Bank B Inwood Forest, N.A., secured by a
Deed of Trust covering eight tracts of land in Harris County.  Two years later, Victor and his wife, Louise,
established three trusts, each named for one of the couple=s three children:  the Antoinette Bracher Lawrence Trust, the
Barbara K. Bracher Trust, and the David A. Bracher Family Trust.  These trusts were each initially funded with
several properties, although none of the properties used to secure Victor=s 1980 note were included.  Each trust named Victor and Louise as both
grantors and trustees, and each permitted them to direct the distribution of
the income and principal of the trust. 
Each trust also contained a Aspendthrift@ clause, providing that before actual
receipt by a beneficiary of any income or property from the trust, the property
could not be attached by any of the beneficiary=s creditors.

Victor
died in 1987, and Louise Bracher was appointed independent executor of his
estate.  In 1988, Louise signed a
Modification, Renewal and Extension of Real Estate Note and Liens and Deed of
Trust (ARenewal Note@) with First City, in the amount of
$388,822.37.  Louise signed the note both
individually and in her capacity as independent executor of Victor=s estate.  By its terms, the Renewal Note came due on
February 18, 1991.

After a
series of mergers and name changes, First City was placed into
receivership.  The Renewal Note was
eventually assigned to FCLT in 1995.  In
1997, FCLT sent Louise a notice of default and demand for payment on the
Renewal Note.








Shortly
after FCLT sent the default notice, however, Louise died.  Louise=s daughters, Antoinette Bracher
Lawrence and Barbara Olson,[1]
were appointed co-independent executors of her estate.  By their terms, both the Antoinette Bracher
Lawrence Trust and the Barbara K. Bracher Trust were distributed to Lawrence
and Olson, respectively.  The David A.
Bracher Family Trust (AFamily Trust@), however, remained intact, with two of Victor and Louise=s grandchildrenCJames Bracher and Victoria
Bracher-NoyesClater appointed co-trustees.

                                                Procedural Background

In
February 1998, unaware that Louise Bracher had died, FCLT filed the present
lawsuit against her, seeking the amount due under the Renewal Note plus
attorney=s fees.  A year later, FCLT amended its petition to
name as defendants (1) the Estate of Louise Bracher; (2) Lawrence, both
individually and as co-executor of Louise=s estate; (3) Olson, both
individually and as co-executor of Louise=s estate; and (4) David Bracher.  In addition to seeking payment under the
Renewal Note, FCLT further alleged that the defendants Adissipated@ the assets in Louise=s estate and that Lawrence and Olson
breached their fiduciary duties by allowing this dissipation of estate
assets.  In June 1999, FCLT again amended
its petition, adding three new defendants: (1) the Family Trust; (2)
Bracher-Noyes, both individually and as co-trustee of the Family Trust; and (3)
James Bracher, both individually and as co-trustee of the Family Trust.  FCLT=s second amended petition also added
a claim, under the heading AFraud,@ alleging the defendants acted knowingly and intentionally.








David
Bracher filed a motion for summary judgment in December 1999.  In February 2000, three of the other
defendantsCBracher-Noyes and James Bracher (both
individually and as co-trustees) and Lawrence (in her individual capacity only)Cfiled a separate summary judgment
motion (the AFirst Joint Motion@).[2]  FCLT responded by again amending its
petition.  Ultimately, FCLT=s petition asserted the following
five causes of action:

(1)             
A claim against
Lawrence and Olson[3]
for their refusal to pay the amount due under the Renewal Note.

(2)             
Claims against
Lawrence and Olson, as co-executors of Louise Bracher=s estate, and against Lawrence, Olson, James Bracher,
and Bracher-Noyes for Adissipation of assets.@ 

(3)             
Claims against
Lawrence, Olson, James Bracher, and Bracher-Noyes for breach of fiduciary duty.

(4)             
Claims against
Lawrence, Olson, James Bracher, and Bracher-Noyes, both as individuals and as
executors or trustees, for conversion.

(5)             
A
claim against Lawrence and Olson for engaging in fraudulent acts.

FCLT sought a judgment in
the amount of the debt plus interest and attorney=s fees, a turnover order for all
assets currently in or received from Louise=s estate or the trusts to pay FCLT=s debt, an accounting from the
co-executors of Louise=s estate and the co-trustees of the Family Trust, and an
injunction against further distributions from Louise=s estate or the Family Trust.

After
FCLT amended its petition, David Bracher filed an amended motion for summary
judgment, while the remaining defendants filed a new motion for summary
judgment (the ASecond Joint Motion@).[4]  FCLT also filed its own motion for summary
judgment.








The
trial court granted all defendants= motions and ordered that FCLT take
nothing.  In twelve points of error, FCLT
complains the trial court erred by (1) granting summary judgment based on
limitations; (2) granting summary judgment based on the statute of frauds; (3)
granting defendants= summary judgment motions based on Ano evidence@; and (4) denying FCLT=s motion for summary judgment (a)
against Louise=s estate on the debt; (b) against
Lawrence and Olson individually for breach of fiduciary duty and for holding
and dissipating assets subject to FCLT=s debt claim; (c) against James
Bracher and Bracher-Noyes, as co-trustees, for holding assets in the Family
Trust subject to FCLT=s debt claim; (d) against James Bracher and Bracher-Noyes
individually for breach of fiduciary duties and for receiving and dissipating
assets subject to FCLT=s debt claim; (e) against David Bracher for receiving assets
subject to FCLT=s debt claim; (f) for an accounting; (g) for foreclosure
and/or garnishment of assets subject to FCLT=s debt claim and for an injunction
against further dissipation of such assets; and (h) for FCLT=s attorney=s fees.

                                                       Standard of Review








The
following standard for reviewing a traditional motion for summary judgment is
well‑established: (1) the movant must show that no genuine issue of
material fact exists and that it is entitled to summary judgment as a matter of
law; (2) in deciding whether there is a disputed material fact issue precluding
summary judgment, proof favorable to the nonmovant will be taken as true;  and (3) every reasonable inference must be
resolved in the nonmovant=s favor.  Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548‑49 (Tex. 1985).  On a Ano evidence@ summary judgment, we review the
proof in the light most favorable to the nonmovant and disregard all proof and
inferences to the contrary.  Lampasas
v. Spring Ctr., Inc., 988 S.W.2d 428, 432 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).  A no-evidence summary judgment is
improperly granted if the nonmovant counters with more than a scintilla of
probative proof to raise a genuine issue of material fact.  Id. 
More than a scintilla of proof exists when the proof Arises to a level that would enable
reasonable and fair‑minded people to differ in their conclusions.@ 
See Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997) (quoting Transportation Ins. Co. v. Moriel, 879 S.W.2d
10, 25 (Tex. 1994)).

Where,
as here, both sides move for summary judgment, and one motion is granted while
the other is denied, we must review the summary judgment proof and determine
all questions presented, rendering such judgment as the trial court should have
rendered.  Commissioners Court v. Agan,
940 S.W.2d 77, 81 (Tex. 1997).  Because
the trial court=s order does not specify the grounds upon which summary
judgment was granted, we may affirm the judgment on any theory advanced in the
motions that is meritorious.  Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

                          Appellees= Motions for
Summary Judgment

In its
first three points of error, FCLT contends the trial court erred by granting
appellees= motions for summary judgment based
on (1) limitations, (2) the statute of frauds, and (3) Ano evidence@ of one or more essential elements of
FCLT=s claims.  Because we may affirm the court=s judgment on any meritorious ground
asserted, we will review each cause of action alleged by FCLT and determine
whether appellees have established their entitlement to summary judgment on any
ground.

                                                                          Debt

FCLT
first alleges ADefendants Lawrence and Olson have
refused and continue to refuse to pay the legitimate debt of the estate.@ 
FCLT=s debt claim is based on Louise
Bracher=s failure (and the subsequent failure
of her estate) to pay money allegedly due under the Renewal Note.  FCLT does not assert that Bracher-Noyes, James
Bracher, or David Bracher are personally liable on the Renewal Note.  Thus, we need not address any grounds for
summary judgment asserted by these three appellees on FCLT=s debt claim.








In the
First Joint Motion, Lawrence (in her individual capacity) asserted she is
entitled to summary judgment because there is no proof that she signed the
Renewal Note, as required under section 3.401 of the Uniform Commercial Code.[5]   In the Second Joint Motion, Lawrence and
Olson argue FCLT=s claim is barred by the Astatute of frauds@ set forth in section 3.401, as well
as section 26.01 of the Business and Commerce Code.[6]  FCLT does not contend that Lawrence or Olson
signed the Renewal Note, nor does it allege they made any promise or agreement
in writing to answer for Louise=s alleged debt to FCLT. 
Accordingly, as to both Lawrence and Olson in their individual
capacities, we conclude summary judgment was appropriate.

In their
capacities as co-executors, however, Lawrence and Olson have not demonstrated
their entitlement to summary judgment. 
Under the Probate Code, a person having a debt against an estate Amay enforce the payment of the same
by suit against the independent executor.@ 
Tex. Prob. Code Ann. ' 147 (Vernon 1980).  There is no dispute Louise Bracher signed the
Renewal Note.  Lawrence and Olson
asserted no summary judgment ground on FCLT=s debt claim other than the statute
of frauds.  Accordingly, we find the
trial court erred in granting summary judgment on this claim in favor of
Lawrence and Olson, in their capacities as co-executors of Louise=s estate.








                                                         ADissipation of Assets@

Under the heading ADissipation of Assets,@ FCLT=s petition raises four separate
claims.  First, FCLT alleges Lawrence and
Olson, in their capacities as co-executors of Louise=s estate, fraudulently transferred
assets from the estate to themselves and the Family Trust.  Second, FCLT claims Louise Bracher
fraudulently transferred assets into the three trusts.[7]  In the Second Joint Motion, Lawrence and
Olson, in their capacities as co-executors of the estate, assert that FCLT=s fraudulent transfer claims are
barred by limitations.  Under the Uniform
Fraudulent Transfer Act (AUFTA@), a cause of action for fraudulent transfer must be brought
either (1) in most cases, Awithin four years after the transfer was made@; (2) in cases where the alleged
transfer was made to an insider for an antecedent debt, Awithin one year after the transfer
was made@; or (3) in cases where the plaintiff
alleges actual intent to defraud, Awithin one year after the transfer or
obligation was or could reasonably have been discovered by the claimant.@ 
Tex. Bus. & Com. Code Ann.
' 24.010 (Vernon 2002).

With
respect to any transfers allegedly made by Lawrence and Olson from Louise
Bracher=s estate, no such transfers could
have been made until after Lawrence and Olson were appointed co-executors.  This appointment did not occur until after
Louise=s death in 1997.  FCLT=s lawsuit was filed well within the
limitations period.  Accordingly, summary
judgment on this particular claim was inappropriate.

Regarding
FCLT=s claim that Louise Bracher
fraudulently transferred assets into the trusts, Lawrence and Olson argue the
allegedly fraudulent transfers occurred, if at all, when the three trusts were
funded.  Because Louise Bracher=s last affirmative act placing assets
into the trusts occurred in 1988, Lawrence and Olson assert FCLT=s cause of action accrued no later
than 1988, and thus is barred by the UFTA=s four-year statute of
limitations.  We disagree.








Under
the UFTA, a Atransfer@ of real property is made

when the transfer is so far perfected that a good
faith purchaser of the asset from the debtor against whom applicable law
permits the transfer to be perfected cannot acquire an interest in the asset
that is superior to the interest of the transferee.

Id. ' 24.007(1)(A) (Vernon 2002).  By the express terms of the trusts, Louise
Bracher retained full control over the right to sell or otherwise dispose of
the property in those trusts during her lifetime.  Therefore, none of the property held in the
trusts could have been transferred, for UFTA purposes, until Louise=s death in 1997.  Only then was the transfer of property Aso far perfected@ that a potential purchaser could no
longer acquire a superior interest in the property from Louise Bracher.  Accordingly, we conclude FCLT=s cause of action based on alleged
fraudulent transfers from Louise Bracher to the trusts was brought within four
years after the alleged transfers were made.

Because
limitations was the only summary judgment ground asserted by Lawrence and
Olson, in their capacities as co-executors of Louise=s estate, the trial court erred in
granting summary judgment in their favor on FCLT=s claim for Adissipation of assets.@








FCLT=s third and fourth claims under the Adissipation@ heading are that the refusal of
Lawrence, Olson, James Bracher, and Bracher-Noyes to pay FCLT=s debt claim from trust assets is a
fraudulent transfer,[8]
and that any transfer of assets from the three trusts to the individual
defendants[9]
constitutes a fraudulent transfer. 
Essentially, FCLT alleges that in addition to the transfers from Louise
into the trusts, any subsequent transfers from the trusts, as well as the
refusal to pay FCLT=s debt claim from the trust assets, are themselves fraudulent
transfers under the UFTA.  In the First
Joint Motion, Lawrence, Bracher-Noyes, and James Bracher argued (1) FCLT=s claim is excluded as a Adebt@ under the UFTA, and (2) there is no
evidence to support several essential elements of FCLT=s claim.

Lawrence,
Bracher-Noyes, and James Bracher first argue any property that was subject to
FCLT=s Deed of Trust lien could not have
been fraudulently transferred because such property was not an Aasset@ under the UFTA.  See Tex.
Bus. & Com. Code Ann. ' 24.002(2)(A) (Vernon 2002)
(defining Aasset@ to exclude Aproperty to the extent it is
encumbered by a valid lien@); see also id. ' 24.002(12) (defining Atransfer@ as any mode of disposing of or
parting with Aan asset or an interest in an asset@). 
It appears from the record, however, that FCLT=s fraudulent transfer claim does not
include the specific properties named in the Deed of Trust accompanying Victor
Bracher=s 1980 note.  Accordingly, this portion of the First Joint
Motion does not apply to FCLT=s fraudulent transfer claim.








In the Ano evidence@ portion of their argument, Lawrence,
Bracher-Noyes, and James Bracher asserted there was no evidence that any
alleged transfer of assets met any of the tests for a fraudulent transfer set
forth in the UFTA.[10]  With respect to alleged transfers of trust
assets, we agree FCLT presented no summary judgment proof that such transfers
met any of the grounds for fraudulent transfers under the UFTA.  At most, FCLT presented proof that assets
were transferred from the trusts, but FCLT failed to point to any summary
judgment proof that these transfers met the requirements set forth in section
24.006.  For example, FCLT failed to
provide any proof that the trusts were insolvent at the time of an alleged
transfer, or that they became insolvent as a result of a transfer.  We conclude that, to the extent FCLT alleges
that Lawrence, Bracher-Noyes, or James Bracher transferred assets from the
three trusts to themselves or others, FCLT failed to present summary judgment
proof that those transfers were fraudulent, and therefore summary judgment was
appropriate on that portion of FCLT=s claim.

Because
Olson was not a party to the First Joint Motion, her only asserted ground for
summary judgment on FCLT=s fraudulent transfer claims against her individually is
limitations.  As noted above, the UFTA
has a four-year statute of limitations on most claims.  Tex.
Bus. & Com. Code Ann. ' 24.010.  Any claim against Olson for fraudulent
transfer of trust assets could not have accrued until after she took possession
of the trust assets on Louise=s death in 1997. 
Accordingly, the trial court erred in granting summary judgment on this
claim to Olson individually.

FCLT
also alleges appellees received assets from Louise Bracher or her estate
that were fraudulently transferred.  Under
the UFTA, a creditor may, under certain circumstances, recover judgment from
the transferee for the value of a fraudulently transferred asset, attach the
transferred asset or other property of the transferee, or obtain an injunction
against the transferee preventing further disposition of the asset or other
property.  See Tex. Bus. & Com. Code Ann. '' 24.008, 24.009 (Vernon 2002).  Because we conclude the trial court erred in
granting summary judgment on some of FCLT=s fraudulent transfer claims, those
appellees receiving assets alleged to have been fraudulently transferred may be
subject to the remedies set forth in the UFTA, and thus they remain proper
parties to FCLT=s fraudulent transfer claims. 
See id.








Finally,
David Bracher asserts he was entitled to summary judgment because FCLT failed
to produce any proof of the amount or value of assets allegedly transferred or
received by him.  In response, FCLT
refers to James Bracher=s deposition, during which he identified at least two checks,
totaling over $20,000, that were made out to David Bracher from the Family
Trust.  FCLT alleges this trust is
comprised of funds that were fraudulently transferred from Louise=s estate.  We cannot say that FCLT has presented no
proof of the value of assets transferred to David Bracher.

Therefore,
with respect to FCLT=s claim for dissipation of assets, we conclude: (1) the trial
court erred in granting summary judgment in favor of Lawrence and Olson, as
co-executors of Louise=s estate; (2) the trial court erred in granting summary
judgment in favor of Olson, individually, based on any alleged transfer she
made; and (3) the trial court did not err in granting summary judgment in favor
of Lawrence, individually, and Bracher-Noyes and James Bracher, individually
and as co-trustees of the Family Trust, based on any alleged transfers they
made.[11]  To the extent that the individual appellees
each received assets that were alleged to have been fraudulently transferred by
Louise or the executors of her estate, however, they should not be dismissed
from the lawsuit as defendants with respect to FCLT=s fraudulent transfer claims.

                                                       Breach
of Fiduciary Duty

Next,
FCLT alleges Lawrence and Olson breached alleged fiduciary duties by allowing
the assets in Louise=s estate to be dissipated before paying FCLT=s alleged debt.  FCLT also claims Bracher-Noyes and James
Bracher breached fiduciary duties by allowing the Family Trust=s assets to be dissipated as well.








In the
First Joint Motion, Lawrence, Bracher-Noyes, and James Bracher moved for
summary judgment on the ground that there is no evidence by which FCLT
established the existence of a fiduciary duty. 
Fiduciary duties arise either from certain formal relationships that are
recognized as fiduciary as a matter of law, or from the existence of an
informal, Aconfidential@ relationship between the
parties.  Insurance Co. of N. Am. v.
Morris, 981 S.W.2d 667, 674 (Tex. 1998). 
The existence of a confidential or fiduciary relationship is ordinarily
a question of fact, and the issue only becomes a question of law when it is one
of no evidence.  Crim Truck &
Tractor Co. v. Navistar Int=l Transp. Corp., 823 S.W.2d 591, 594 (Tex.
1992).  A party asserting breach of a
fiduciary duty must establish the existence of a confidential or similar
relationship giving rise to a fiduciary duty. 
See Bado Equip. Co. v. Bethlehem Steel Corp., 814 S.W.2d
464, 475 (Tex. App.CHouston [14th Dist.] 1991, no writ).  FCLT has provided no proof of any
relationship between FCLT and Bracher-Noyes or James Bracher that may give rise
to a fiduciary duty.  Accordingly,
Bracher-Noyes and James Bracher are entitled to summary judgment on FCLT=s breach of fiduciary duty claim.








With
respect to Lawrence, however, FCLT asserts a fiduciary duty arose by virtue of
Lawrence=s duties as an independent
executor.  The relationship between an
executor and the estate=s beneficiaries is one that gives rise to a fiduciary duty as
a matter of law.  Huie v. DeShazo,
922 S.W.2d 920, 923 (Tex. 1996). 
However, no such formal recognition exists for the relationship between
an independent executor and the estate=s creditors.  An executor=s fiduciary duty to the estate=s beneficiaries arises from the
executor=s status as trustee of the property
of the estate.  Humane Soc=y v. Austin Nat=l Bank, 531 S.W.2d 574, 577 (Tex.
1975).  Under the Probate Code, a
decedent=s estate immediately vests in the
devisees, legatees, and heirs at law of the estate, subject to payment of the
decedent=s debts.  Tex.
Prob. Code Ann. ' 37 (Vernon Supp. 2002). 
The executor thus holds the estate in trust for the benefit of those who
have acquired a vested right to the decedent=s property under the will.  See id.  FCLT points to no provision in the Probate
Code or elsewhere that an independent executor also holds the estate property
in trust for those with claims against the estate.  FCLT cites only section 146 of the Probate
Code, which imposes certain duties on an independent executor, including a duty
to approve and pay proper claims against the estate.  Tex.
Prob. Code Ann. ' 146(a) (Vernon Supp. 2002). 
This statutory duty does not support a claim that an independent
executor holds estate assets in trust for the benefit of creditors, nor does it
otherwise give rise to a fiduciary duty.

Our
research has revealed two cases in which Texas courts, with minimal analysis,
have described the relationship between an independent executor and a creditor
of the estate as Afiduciary.@  In Ertel v. O=Brien, 852 S.W.2d 17 (Tex. App.CWaco 1993, writ denied), the
appellate court held a bank acting as independent executor of an estate Abreached its statutory and fiduciary
duties@ and was individually liable to a
creditor for the bank=s failure to pay a valid claim against the estate.  Id. at 21.  The authorities cited in Ertel,
however, provide support for two distinct propositions: (1) by statute, an
executor is subject to individual liability for failing to pay a proper claim
against the estate; and (2) the executor of an estate is held to the same
fiduciary standards as a trustee.  See
id. at 20-21.  The court provides
no analysis or explanation why an independent executor=s fiduciary duty to the estate should
be expanded to include a duty to the estate=s creditors.








In Ex
parte Buller, 834 S.W.2d 622 (Tex. App.CBeaumont 1992, orig. proceeding), a
habeas corpus proceeding, the court notes an independent executor Astands in a fiduciary relationship@ with the estate=s creditors.  Id. at 626.  In support of this proposition, the court
cites two Texas Supreme Court cases: Pearce v. Stokes, 155 Tex. 564, 291
S.W.2d 309 (1956), and Cochran=s Adm=rs v. Thompson, 18 Tex. 652 (1857).  Both cases are distinguishable because each
deals with court-appointed (as opposed to independent) administrations.  In Pearce, the issue was whether an
estate administrator could set aside the forced sale of the decedent=s property by one holding a mortgage
on that property, where the sale occurred after the decedent=s death, but before administration of
the estate began.  The court held the
administrator could set aside the sale, stating the administration of an estate
Ais for the benefit of all creditors,
not just those who have secured claims or other claims of high priority.@ 
291 S.W.2d at 312.  Thus, the
court in Pearce was concerned not with the relationship between the
executor and the estate=s creditors, but rather the relationship among the various
creditors.  We do not read Pearce
to say the executor in that case owed a fiduciary duty to the estate=s creditors.  In Thompson, the court notes the
appointment of an administrator in that case was Amerely a trust to pay the claims of
creditors, and then to restore the remainder of the assets to the heirs.@ 
18 Tex. at 656.  The appointment
of an executor or administrator may, depending on the language in the court=s order, create a trust on behalf of
the estate=s creditors and, therefore, a
fiduciary duty to the creditors.  Under
the present statutory scheme, however, we cannot say an independent executor
automatically holds the estate assets in trust for the benefit of estate
creditors.

We
conclude that the relationship between FCLT and Lawrence, as independent
executor of Louise Bracher=s estate, does not give rise to a fiduciary duty as a matter
of law.  Furthermore, FCLT failed to
provide any proof supporting the existence of a confidential or similar
relationship between Lawrence and FCLT. 
Accordingly, summary judgment was properly granted in favor of Lawrence.

In the
Second Joint Motion, Olson asserted she was entitled to summary judgment based
on the statute of limitations.  Breach of
fiduciary duty claims are governed by the four-year statute.  Tex.
Civ. Prac. & Rem. Code Ann. ' 16.004(a)(5) (Vernon Supp.
2002).  Any fiduciary duties that Olson
allegedly owed to FCLT would not have come into existence until after Louise
Bracher=s death in 1997, when she became
co-executor of Louise=s estate.  Because her
alleged duty could not have arisen before 1997, any claim against Olson for breach
of this purported duty likewise could not have accrued before that time.  Therefore, Olson is not entitled to summary
judgment on limitations.

Accordingly,
on FCLT=s breach of fiduciary duty claim, we
conclude the trial court erred in granting summary judgment in favor of Olson,
but the court did not err in granting summary judgment in favor of Lawrence,
Bracher-Noyes, and James Bracher.

                                                                    Conversion








FCLT
next alleges that by refusing to use assets in their possession to pay FCLT=s debt claim, Lawrence, Olson,
Bracher-Noyes, and James Bracher have converted those assets to the detriment
of FCLT.  In their Second Joint Motion,
appellees asserted this claim fails because FCLT never had title to or the
right to possess the assets that were allegedly converted.  We agree. 
To bring a conversion claim, the aggrieved party must have either
ownership, possession, or the right to immediate possession of the property.  Crutcher v. Continental Nat=l Bank, 884 S.W.2d 884, 888 (Tex. App.CEl Paso 1994, writ denied).  A lien on property does not provide title to
that property, but rather the right to have satisfaction out of the property to
secure the payment of a debt.  Id.  Because the plaintiffs in Crutcher had
only a right to obtain satisfaction of a debt (i.e., a lien), the court
held they had no cause of action for conversion.  Id. at 889.  Similarly, FCLT does not claim title to,
possession of, or a right to immediate possession of the property in
question.  FCLT claims only a lien on
certain property for payment of its alleged debt.  We conclude that summary judgment was
properly granted against FCLT on its conversion claim.

                                                                         Fraud

Finally,
FCLT alleges Lawrence and Olson engaged in fraudulent behavior by knowingly and
intentionally engaging in the acts complained of elsewhere in the
petition.  Lawrence and Olson contend
they are entitled to summary judgment on FCLT=s fraud claim because FCLT has
presented no evidence to support the essential elements of common-law
fraud.  Specifically, FCLT failed to
provide summary judgment proof showing the existence of (1) a false, material
misrepresentation (2) that was knowingly or recklessly made (3) with the intent
that the statement be relied upon by FCLT. 
See Sears, Roebuck & Co. v. Meadows, 877 S.W.2d 281,
282 (Tex. 1994) (per curiam).  To the
extent FCLT=s petition may be read as raising an
independent cause of action for common-law fraud, summary judgment for Lawrence
and Olson is proper.

                                 FCLT=s Motion for
Summary Judgment








FCLT=s nine remaining points of error are
all directed at the trial court=s denial of FCLT=s motion for summary judgment.  Where a party moves for summary judgment on
its own claim for affirmative relief, the moving party must conclusively
establish each essential element of that claim. 
See MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986) (per
curiam).  If the party opposing the
summary judgment relies on an affirmative defense, that party must then come
forward with summary judgment proof sufficient to raise an issue of fact on
each element of the defense to avoid summary judgment.  Brownlee v. Brownlee, 665 S.W.2d 111,
112 (Tex. 1984).

                                                        Louise
Bracher=s Estate

In its
fourth point of error, FCLT argues the trial court erred in denying its motion
for summary judgment against Athe Estate of Louise Bracher@[12] based on FCLT=s debt claim.  This point of error also asserts Atrust assets and estate assets were
subject to the debt and should have been used to pay the debt.@ 
Thus, FCLT=s fourth point of error refers not only to whether it is
entitled to judgment on the debt claim, but also to the separate question of
which assets FCLT can reach to collect such a judgment.  Despite the multifarious nature of FCLT=s point of error, we address it
because we can ascertain with reasonable certainty the alleged errors raised by
FCLT.  See Zeolla v. Zeolla,
15 S.W.3d 239, 241 n.2 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).

With
respect to its debt claim, FCLT presented summary judgment proof of the
following:

(1)             
Louise Bracher
executed the Renewal Note, payable to First City Bank B Inwood Forest, N.A.;

(2)             
the Renewal Note
became due on February 18, 1991;








(3)             
the Renewal Note
was assigned to FCLT, the current owner and holder of the Renewal Note;

(4)             
Louise defaulted
on the Renewal Note and, despite demands, she and the executors of her estate
have failed to pay the amount owing; and

(5)             
as
of January 10, 2000, the amount owed on the Renewal Note is $701,017.84 in
principal and interest, with interest accumulating at $106.77 per day.

This proof is sufficient
to establish FCLT=s claim for a debt.  See
Loomis v. Republic Nat=l Bank of Dallas, 653 S.W.2d 75, 78 (Tex. App.CDallas 1983, writ ref=d n.r.e.).  Lawrence and Olson responded to FCLT=s summary judgment motion only by
asserting the statute of frauds as a defense. 
As discussed above, the statute of frauds does not preclude FCLT from
asserting this claim against Lawrence and Olson in their capacities as
co-executors of Louise=s estate.  We conclude
FCLT has shown its entitlement to summary judgment on its debt claim against
Lawrence and Olson, in their capacities as co-executors of Louise=s estate.

FCLT
next contends it conclusively established that all assets in the three trusts
are subject to FCLT=s debt claim because the spendthrift clauses in the trusts
are void with respect to claims by Louise Bracher=s creditors.  FCLT relies on section 112.035 of the Texas
Property Code, titled ASpendthrift Trusts,@ which provides:

If the settlor is also a beneficiary of the trust, a
provision restraining the voluntary or involuntary transfer of his beneficial
interest does not prevent his creditors from satisfying claims from his interest
in the trust estate.








Tex.
Prop. Code Ann. ' 112.035(d) (Vernon Supp. 2002).  FCLT asserts this section creates a statutory
lien in its favor on all assets placed in the three trusts.  However, FCLT cites to no Texas cases
involving the situation presented here, in which the creditor seeks to satisfy
its claim from assets in which the debtor no longer has a beneficial
interest.  In other words, whether or not
section 112.035(d) would have permitted FCLT to satisfy its debt claim from the
trust assets while Louise was alive, FCLT has not conclusively established its
right to recovery from the trusts after her death.[13]  The trial court did not err in denying
summary judgment based on FCLT=s alleged statutory lien on the trust assets.

FCLT
also argues assets distributed from Louise=s estate prior to paying FCLT=s claim were subject to the
debt.  Under section 37 of the Probate
Code, property of a decedent received by the estate=s beneficiaries is subject to payment
of the decedent=s debts.  Tex. Prob. Code Ann. ' 37. 
To enforce a claim against the beneficiaries, however, the creditor must
show, specifically, what property came into their hands from the estate.  Perkins v. Cain=s Coffee Co., 466 S.W.2d 801, 802-03 (Tex. Civ.
App.CCorpus Christi 1971, no writ).  FCLT=s summary judgment proof consists
solely of Lawrence=s testimony that she and others received Aa few pieces of furniture,@ Asome artwork,@ Aa little bit of jewelry,@ and Aa couple pieces of clothes@ from Louise=s estate.  This testimony alone is insufficient to
establish the distributed assets with enough specificity to enable the court to
properly decree FCLT=s lien.  See id.
at 803.  Furthermore, FCLT has not shown
conclusively that this property was subsequently sold, commingled, or lost its
character so as to impose personal liability on the recipients.  Id.

We
sustain FCLT=s fourth point of error with respect
to the trial court=s denial of FCLT=s motion for summary judgment on its
debt claim against Lawrence and Olson, as co-executors of Louise=s estate.  FCLT=s fourth point of error is otherwise
overruled.








                                               Lawrence
and Olson, Individually

In points of error five and six, FCLT contends the
trial court erroneously denied summary judgment against Lawrence and Olson,
individually, based on FCLT=s claims they (1) breached their fiduciary duties, (2) hold
trust assets subject to FCLT=s debt claim, and (3) dissipated assets subject to FCLT=s debt claim.  For reasons discussed above, FCLT has not
conclusively established the existence of a confidential relationship between
itself and the executors of Louise=s estate.  Thus, summary judgment was properly denied as
to FCLT=s claim for breach of fiduciary duty.

Next,
FCLT asserts that Lawrence and Olson are personally liable for holding and
dissipating assets subject to FCLT=s debt because all assets in the
trusts were subject to the debt, citing section 112.035(d) of the Property
Code.  We already have determined FCLT
failed to establish as a matter of law that after Louise Bracher=s death, the trust assets were
subject to FCLT=s debt claim under section 112.035(d).  Thus, summary judgment was properly denied as
to claims based on holding or dissipating trust assets.  FCLT=s fifth and sixth points of error are
overruled.[14]

                               Bracher-Noyes,
James Bracher, and David Bracher








In its
seventh, eighth, and ninth points of error, FCLT asserts the trial court erred
in denying FCLT summary judgment against Bracher-Noyes and James Bracher, both
individually and as co-trustees of the Family Trust, and against David Bracher
individually.  FCLT=s claims against these appellees rest
on the proposition that all of the assets in the trusts were subject to FCLT=s debt claim.  Because FCLT has not established this
proposition as a matter of law, summary judgment is inappropriate on its claims
that assets in the Family Trust were improperly held, received, or dissipated
by Bracher-Noyes, James Bracher, or David Bracher.

Furthermore,
FCLT moved for summary judgment against Bracher-Noyes and James Bracher on its
claim for breach of fiduciary duty.  As
discussed above with respect to appellees= motions for summary judgment, FCLT
failed to present any summary judgment proof of a relationship between FCLT and
the trustees of the Family Trust that would give rise to a fiduciary duty.  Accordingly, summary judgment on this claim
was properly denied.  FCLT=s points of error seven through nine
are overruled.

                                                                    Accounting

In its
tenth point of error, FCLT claims the trial court erred in denying its motion
for summary judgment to compel an accounting from Lawrence and Olson, as
co-executors of Louise=s estate, and from Bracher-Noyes and James Bracher, as
co-trustees of the Family Trust.  FCLT
does not cite a single authority nor set forth any legal argument to support
its contention that it is entitled to an accounting.  A point of error not supported by authority
is waived.  Wright v. Greenberg, 2
S.W.3d 666, 673 (Tex. App.CHouston [14th Dist.] 1999, pet. denied).  We overrule FCLT=s tenth point of error.

                                 Foreclosure,
Garnishment, and Injunctive Relief

FCLT
next complains the trial court erred in denying its summary judgment motion for
(1) foreclosure and/or garnishment of assets, and (2) an injunction against
further dissipation of assets.  Although
FCLT refers to both trust and estate assets in the statement of its point of
error, FCLT identifies only trust assets to which it claims an entitlement to
foreclose or garnish.  Because FCLT has
not shown as a matter of law that all trust assets were subject to its debt
claim, the trial court did not err in denying summary judgment on FCLT=s request to foreclose or garnish
those assets.








FCLT
also claims it was entitled to an injunction preventing appellees from further
dissipating or otherwise disposing assets from the trusts or estate.  FCLT=s brief points to no authority for
its alleged entitlement to such injunctive relief.  Accordingly, FCLT=s complaint that the trial court
erred in denying the injunction by summary disposition is waived.  See Wright, 2 S.W.3d at
673.  FCLT=s eleventh point of error is
overruled.

                                                                Attorney=s Fees

Finally,
in its twelfth point of error, FCLT complains the trial court erred by not
awarding FCLT its reasonable attorney=s fees.  Because the trial court granted summary
judgment to appellees on all of FCLT=s claims, it did not address FCLT=s request for attorney=s fees.  However, because we conclude FCLT was
entitled to judgment as a matter of law on its debt claim against Lawrence and
Olson as co-executors of Louise Bracher=s estate, we will consider whether
FCLT has also established its entitlement to attorney=s fees on that claim.

Attorney=s fees may not be recovered from an
opposing party unless such recovery is provided for by statute or by
contract.  Travelers Indem. Co. of
Conn. v. Mayfield, 923 S.W.2d 590, 593 (Tex. 1996).  In this case, the Renewal Note provides for
the recovery of FCLT=s attorney=s fees through the incorporation of a fee provision in Victor
Bracher=s original 1980 note.  Paragraph 4 of the Renewal Note provides that
Louise Bracher Aagrees to be bound by and to abide by all of the terms and
conditions contained in the [1980] Note and the Deed of Trust.@ 
The 1980 note states that if suit is filed to collect on a default, the
debtor is liable for Aa reasonable amount as attorney=s or collection fees.@ 
Thus, FCLT is entitled to recover a reasonable fee from the
representatives of Louise Bracher=s estate in their capacities as
co-executors of the estate.








As part of
its summary judgment proof, FCLT submitted the affidavit of Mynde S. Eisen,
FCLT=s attorney, in support of FCLT=s request for attorney=s fees.  In her affidavit, Eisen attested the
following fees were reasonable: (1) $39,000.00 for services performed on behalf
of FCLT to collect on the claims against appellees; (2) $29,900.00 in
out-of-pocket costs and expert fees; (3) $10,000.00 to defend or prosecute an
appeal; (4) $5,000.00 to prepare or respond to a request for review by the
Texas Supreme Court; and (5) $5,000.00 to defend or prosecute an appeal in the
supreme court.  This affidavit is
uncontested by appellees.  We therefore
sustain FCLT=s twelfth point of error and render
judgment for FCLT against Olson and Lawrence, in their capacities as
co-executors, in the amounts of $68,900.00 in attorney=s fees and costs for trial,
$10,000.00 for appeal to this court, and $10,000.00 in conditional fees in the
event of a petition for review and subsequent grant by the Texas Supreme Court.

                                                                Conclusion

Based on
the foregoing, we conclude as follows:

(1)             
Because
the statute of frauds does not preclude FCLT=s debt claim against Antoinette
Lawrence and Barbara Olson in their capacities as co-executors of Louise
Bracher=s estate, and because FCLT has
conclusively established its entitlement to judgment on this claim, we reverse
the summary judgment granted in favor of Lawrence and Olson as co-executors and
render judgment in favor of FCLT.  We
also render judgment against Lawrence and Olson, as co-executors of Louise=s estate, for $78,900.00 as
reasonable attorney=s and collection fees, plus $5,000.00 in conditional fees for
any petition for review to the Texas Supreme Court and $5,000.00 in conditional
fees for any subsequent grant of review by the supreme court.

(2)             
FCLT=s fraudulent transfer claims are not
barred by limitations; therefore, we reverse the summary judgments in favor of
Lawrence and Olson as co-executors of Louise=s estate and Olson individually and
remand these claims to the trial court for further proceedings.

(3)             
Because
limitations does not bar FCLT=s claim for breach of fiduciary duty against Olson, we
reverse the grant of summary judgment in her favor on this claim and remand for
further proceedings.








(4)             
We
affirm the trial court=s judgment in all other respects.

 

 

 

 

/s/        Paul
C. Murphy

Senior Chief Justice

 

 

Judgment rendered and Opinion on
Motion for Rehearing filed October 17, 2002.

Panel consists of Justices Edelman
and Frost and Senior Chief Justice Murphy.[15]

Publish C Tex.
R. App. P. 47.3(b).

 











[1]  Some time
after the trusts were created, Barbara Bracher married and changed her name to
Barbara Olson.





[2]  Olson had not
yet appeared in the lawsuit at the time the First Joint Motion was filed.





[3]  On this and
some other claims in FCLT=s petition, FCLT does not specify the capacity in
which the named defendants are being sued. 
For purposes of our review, we will treat these claims as having been
raised against each such defendant in both the defendant=s individual and representative capacity.





[4]  The Second Joint
Motion was filed on behalf of Lawrence and Olson, both individually and as
co-executors of Louise=s estate, and James Bracher and Bracher-Noyes, both
individually and as co-trustees of the Family Trust.  In contrast to David Bracher=s motion, the Second Joint Motion was not captioned as
an amended motion.  Thus, the First Joint
Motion remained pending.





[5]  Section 3.401
provides, AA person is not liable on an instrument unless the
person . . . signed the instrument . . . .@  Tex.
Bus. & Com. Code Ann. '
3.401(a) (Vernon 2002).





[6]  The relevant
portion of section 26.01 states:

 

(a)              
A promise or
agreement described in Subsection (b) of this section is not enforceable unless
the promise or agreement, or a memorandum of it, is

(1)             
in writing; and

(2)             
signed by the
person to be charged with the promise or agreement or by someone lawfully
authorized to sign for him.

(b)             
Subsection (a) of
this section applies to:

(1)             
a promise by an
executor or administrator to answer out of his own estate for any debt or
damage due from his testator or intestate; [and]

(2)             
a promise by one
person to answer for the debt, default, or miscarriage of another person . . .
.

 

Tex. Bus. & Com. Code
Ann. ' 26.01
(Vernon 2002).





[7]  This claim is
properly brought against Lawrence and Olson in their capacities as
co-executors.  See Tex. Prob. Code Ann. ' 147.





[8]  FCLT does not
specify in which capacity it alleges the defendants acted.  Because this claim focuses on the use of trust
assets, however, we will presume the claim is directed to Olson and Lawrence as
individuals and James Bracher and Bracher-Noyes in their capacities as
co-trustees of the Family Trust.





[9]  At Louise=s death, Lawrence and Olson each received the assets
in their respective trusts outright, while the Family Trust remained intact,
with Bracher-Noyes and James Bracher eventually named as co-trustees.  FCLT claims that Bracher-Noyes, James
Bracher, and David Bracher have each received disbursements from the Family
Trust.





[10]  The UFTA
provides at least four different grounds for finding a transfer to be
fraudulent.  See Tex. Bus. & Com. Code Ann. '' 24.005(a)(1), 24.005(a)(2), 24.006(a), &
24.006(b) (Vernon 2002).  Although FCLT
refers to both sections 24.005 and 24.006 in its petition, it cites only
section 24.006 in response to the various summary judgment motions.  Furthermore, FCLT conceded during oral
argument that it was not asserting an actual intent to defraud, a required
element for a claim arising under section 24.005(a)(1).  We therefore presume that FCLT=s fraudulent transfer claim is limited to the grounds
set forth in section 24.006.

 

Section 24.006 provides:

 

(a)        A
transfer made or obligation incurred by a debtor is fraudulent as to a creditor
whose claim arose before the transfer was made or the obligation was incurred
if the debtor made the transfer or incurred the obligation without receiving a
reasonably equivalent value in exchange for the transfer or obligation and the
debtor was insolvent at that time or the debtor became insolvent as a result of
the transfer or obligation.

(b)        A
transfer made by a debtor is fraudulent as to a creditor whose claim arose
before the transfer was made if the transfer was made to an insider for an
antecedent debt, the debtor was insolvent at that time, and the insider had
reasonable cause to believe that the debtor was insolvent.

 

Id. ' 24.006.





[11]  This includes
any alleged Atransfer@
consisting of the refusal to pay FCLT=s debt
claim.





[12]  It is
well-settled that the estate of a decedent is not a legal entity and may not
sue or be sued as such.  Price v.
Estate of Anderson, 522 S.W.2d 690, 691 (Tex. 1975).  However, a judgment involving a decedent=s estate may still be valid if the estate=s personal representative Ahad notice of and participated sufficiently in the
case to make the judgment binding against the representative.@  Bernstein
v. Portland Sav. & Loan Ass=n, 850 S.W.2d 694, 700 (Tex. App.CCorpus Christi 1993, writ denied); see also Embrey
v. Royal Ins. Co. of Am., 22 S.W.3d 414, 415 n.2 (Tex. 2000).  Lawrence and Olson, the co-executors of
Louise=s estate, both appeared and participated in this case
in their capacities as executors of the estate. 
We therefore treat FCLT=s fourth point of error as requesting judgment against
Lawrence and Olson as personal representatives of the estate.





[13]  In its motion
for rehearing, FCLT urges us to follow decisions from three other jurisdictions
holding that even after the settlor=s death,
a creditor may reach trust assets that the settlor/beneficiary could have used
to pay the debt during his or her lifetime. 
See In re Estate of Nagel, 580 N.W.2d 810, 812 (Iowa
1998); State St. Bank & Trust Co. v. Reiser, 389 N.E.2d 768, 771
(Mass. Ct. App. 1979); In re Estate of Kovalyshyn, 343 A.2d 852, 859
(N.J. Hudson County Ct. 1975); Restatement
(Second) of Trusts ' 156(1) (1959). 
But see Schofield v. Cleveland Trust Co., 21 N.E.2d 119,
122-23 (Ohio 1939) (interpreting an Ohio statute on spendthrift trusts and
concluding that a creditor=s right to the settlor=s
interest in a trust terminates on the settlor=s
death).  Because this is an issue of
first impression in Texas, and it has not been fully briefed, either in the
trial court or in this court, we express no opinion whether, as a matter of
law, section 112.035(d) of the Property Code applies after the settlor=s death.





[14]  FCLT argues
for the first time on rehearing that it is entitled to a judgment that all
trust assets are subject to FCLT=s debt
because it conclusively established that the transfer of assets into the trusts
was a fraudulent transfer under Tex.
Bus. & Com. Code Ann. '
24.006(a).  An issue raised for the first
time in a motion for rehearing is too late to be considered.  See Lee v. Lee, 47 S.W.3d 767,
799 (Tex. App.CHouston [14th Dist.] 2001, pet. denied).





[15]  Senior Chief
Justice Paul C. Murphy sitting by assignment.